UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:14-CV-00016-JHM

LARRY DOWNS                                                                             PLAINTIFF

v.

BEL BRANDS USA, INC.                                                                  DEFENDANT

### M<span>EMORANDUM</span> O<span>PINION AND</span> O<span>RDER</span>

This matter is before the Court on the Motion to Dismiss [DN 16] of the Defendant, Bel Brands USA, Inc. ("Bel"). This matter is also before the Court on the Plaintiff's Motion to Enter Affidavit of Karen Roof [DN 21], as well as his Motions to Enter Affidavit of Jean-Pierre Plessis [DNs 23, 24]. Fully briefed, this matter is ripe for decision. For the following reasons, Bel's motion to dismiss [DN 16] is **GRANTED**. The Plaintiff's motions [DNs 21, 23, 24] are **DENIED**.

### I. B<span>ACKGROUND</span>

The Plaintiff was employed by Bel in its Leitchfield, Kentucky facility from May of 1975 until May of 2013. (Compl. [DN 1-1] ¶ 6.) During his employment, the Plaintiff held the positions of worker, assistant warehouse supervisor, and warehouse supervisor. (Id. ¶ 22.) At some point in the late 1980s to early 1990s, the Plaintiff volunteered to grade and sort old and damaged pallets. The Plaintiff organized the pallets' removal with a third-party distributor. The distributor would then sort the pallets and issue "a small reimbursement check." (Id. ¶¶ 12-14.)

At that same time, John Plessey was the plant manager. (Id. ¶ 12.) Mr. Plessey "authorized the Plaintiff to keep the reimbursement check because he was performing a task that no one else wanted to complete, as a bonus for his extra work." (Id. ¶ 15.) In 2010, Francine Moudry became the plant manager, replacing Mr. Plessey. The Plaintiff spoke with Ms. Moudry about the pallet

agreement and she allowed it to remain in effect. (Id. ¶¶ 18-19.) Further, in December of 2012, the Plaintiff told Bel's interim supervisor, Richard Grace, about his pallet agreement. (Id. ¶ 20.)

In January of 2013, Bel "offered many older employees the opportunity for early retirement and a buyout package." (Id. ¶ 21.) Five months later, in May of 2013, the supply chain supervisor, Hyrum Horn, began investigating the pallet procedure. (Id. ¶ 22.) The Plaintiff fully cooperated with the investigation and told Mr. Horn about his agreement with his previous plant managers. (Id. ¶ 22.) The Plaintiff was put on administrative leave. (Id. ¶ 23.) When he returned, the Plaintiff attended a meeting with Mr. Horn and Vladimir Homola, his manager at the time. The Plaintiff again disclosed that he received the reimbursement money as a bonus. He asked that his previous managers, Mr. Plessey and Ms. Moudry, be contacted to confirm the pallet policy. (Id. ¶¶ 24-25.) Mr. Horn stated that he had contacted Mr. Plessy and Ms. Moudry, but they did not confirm the Plaintiff's account of the policy. (Id. ¶ 25.) Mr. Plessey later told the Plaintiff that he was never contacted by Bel—and that the Plaintiff's recollection of the policy was correct. (Id. ¶ 27.)

On May 13, 2013, Mr. Homola discharged the Plaintiff. (Id. ¶ 26.) A new pallet procedure was then implemented. (Id. ¶ 29.) Further, around that same time, "other older employees [were] discharged for questionable reasons." (Id. ¶¶ 32, 35.) The Plaintiff has now filed a three-count complaint. In this complaint, the Plaintiff asserts an age discrimination claim under the Kentucky Civil Rights Act ("KCRA"). (Id. ¶¶ 33-38.) The Plaintiff also asserts promissory estoppel claims: one based on Bel's alleged violation of its policies prohibiting discrimination, (id. ¶¶ 39-44), and the other based on Bel's alleged violation of its long-standing pallet policy. (Id. ¶¶ 45-50.) On March 21, 2014, Bel filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Plaintiff responded [DN 19]. The Plaintiff then filed motions to enter the affidavits of Karen Roof and Jean-Pierre Plessis [DNs 21, 23, 24].

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[]," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accepting all of the plaintiff's allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for his entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The plaintiff satisfies this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts that are merely "consistent with a defendant's liability" or if the facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79. The allegations must "'show[] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

Bel argues that the Plaintiff's allegations render his age discrimination claim implausible. According to Bel, the Plaintiff's complaint discusses a pallet scheme that its prior management allegedly approved, but which new management ended. Bel argues that the Plaintiff's allegation that he was discharged "due to his age" is thus conclusory and unsupported. With discrimination claims, "broad and conclusory allegations of discrimination cannot be the basis of a complaint and a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims." HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 614 (6th Cir. 2012). Indeed, a plaintiff must allege "sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that Defendant[]

discriminated against Plaintiff with respect to his [alleged protected status].” Han v. Univ. of Dayton, 541 Fed. App'x 622, 626 (6th Cir. 2013) (internal quotation marks omitted). Bel argues that the factual allegations in this case are insufficient.

The Plaintiff responds that his complaint "contains well pleaded, non-conclusory factual allegations, which give rise to a plausible suggestion of pre-textual termination based on age . . . ." (Pl.'s Resp. to Def.'s Mot. [DN 19] 1.) In this respect, the Plaintiff highlights his allegation that Bel implemented a voluntary early retirement program for some of its older employees only five months before he was terminated. According to the Plaintiff, the investigation concerning the pallet procedure and his resulting termination raise "an inference of pre-textual termination on the basis of his age because of its temporal proximity to the Voluntary Separation Program." (Id. at 2.) In other words, the Plaintiff argues that he has sufficiently pleaded that his termination "came at a time that Defendant was clearing out their workforce of older workers . . . ." (Id. at 4.)

The Court disagrees with the Plaintiff's position. While the Plaintiff focuses on the temporal proximity of his termination to Bel's offering of a voluntary early retirement program, the Sixth Circuit has held that "[a]n employee to whom [an early retirement] offer has been extended . . . is the *beneficiary* of any distinction on the basis of age [and cannot] claim to be adversely affected by discrimination in the design or offer of the early retirement package." See Slenzka v. Landstar Ranger, Inc., 122 Fed. App'x 809, 814 (6th Cir. 2004) (emphasis in original). In other words, an offer of voluntary early retirement is not evidence of age discrimination to those who receive the offer. From this proposition, this Court likewise finds that an offer of voluntary early retirement cannot be evidence of age discrimination to someone who did not receive the offer (i.e. the Plaintiff). Indeed, the fact that Bel gave some employees the choice to retire does not create an inference that Bel terminated the Plaintiff based on his age. The Court cannot draw the inference

4

that Bel was "clearing out their workforce of older workers" simply because it offered a benefit to some of its employees who had spent years working for the company. The Plaintiff has not alleged, for instance, that employees who refused to accept the retirement package were fired.

Likewise, the Court finds that the complaint's other allegations only create speculation or suspicion; they do not show entitlement to relief for age discrimination. See Twombly, 550 U.S. at 553-54. In this respect, the Court finds the facts of this case to be similar to the facts in Han v. University of Dayton. There, the Sixth Circuit affirmed the dismissal of the plaintiff's race and gender discrimination claims. The plaintiff, a law professor, had alleged his race and gender, and that he had received a bad review and was later discharged. The plaintiff had also alleged that a white male was hired as an adjunct professor to teach one of his patent law classes. See 541 Fed. App'x at 625. In affirming the dismissal, the Sixth Circuit held:

> Plaintiff alleges no set of facts, beyond these bare and conclusory assertions, from which a reasonable person could infer how his race or gender factored into the University's decisions regarding his employment or caused him to lose his job, as opposed to any other, non-discriminatory basis for decisions regarding his employment. The Court is therefore left to infer that the University's decision-making regarding Plaintiff's employment was discriminatory simply based on the fact that he is a man, or that he is Asian-American, or both.

Id. at 627. A similar conclusion can be reached here. The Plaintiff has alleged that new managers investigated the pallet procedure and terminated him thereafter. While he has alleged that he is over forty years old, the Court simply has no factual basis which would permit it to infer that the Plaintiff's age factored into Bel's decision to terminate the Plaintiff's employment, "as opposed to any other, non-discriminatory basis." Bel's motion [DN 16] is **GRANTED** in this respect. Therefore, the Plaintiff's KCRA claim must be **DISMISSED**.

The Court notes that the Plaintiff's remaining allegation that other "older, experienced" employees were also discharged for "questionable reasons" around the same time does not change

its decision or create an inference of age discrimination in light of the Plaintiff's other allegations. As the plaintiff in Han, the Plaintiff in this case "has offered no specifics regarding who those employees were." See Han, 541 Fed. App'x at 627. The Plaintiff also has not provided any facts surrounding the alleged discharges, or what the reasons were for the alleged terminations. Also, the Plaintiff has not alleged that the older employees were replaced by younger employees. The Court, even when accepting the Plaintiff's allegations as true, simply cannot find that the Plaintiff has alleged an age discrimination claim that is plausible on its face.

Bel next argues that the Plaintiff's first promissory estoppel claim must be dismissed. This claim is based on Bel's alleged policy promising not to discriminate against its employees. The Plaintiff alleges that he relied on Bel's policy to his detriment. (Compl. [DN 1-1] ¶¶ 39-44.) Bel argues that this claim is preempted by the KCRA because the Plaintiff asserts nothing more than that Bel "promised to follow the law." See Puglise v. Regency Nursing, LLC, No. 3:09-CV-457, 2009 WL 3079200 (W.D. Ky. Sep. 23, 2009) (dismissing a plaintiff's promissory estoppel claim which was based on the defendant's maintenance and publishing of a "policy against racial discrimination and retaliation" and noting that since "the promissory estoppel claim asserts the same behavior that is the basis for the statutory discrimination claims, the 'proper remedy'" was "her statutory claims for creation of a hostile work environment and retaliation"). Bel argues that "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." Id. (citing Grzyb v. Evans, 700 S.W.2d 399, 401 (Ky. 1985)).

The Plaintiff argues that his first promissory estoppel claim is not preempted by the KCRA, as Grzyb was "written at a time when KRS § 344 (civil rights) claims were adjudicated by The Kentucky Commission on Human Rights. That has subsequently been removed from the statute.

Therefore, KRS § 344 is not the exclusive remedy . . . ." (Pl.'s Resp. to Def.'s Mot. [DN 19] 5.) The Plaintiff's argument, however, is not persuasive. The cases cited by Bel are on point.

In this respect, the facts in this case are nearly identical to the facts in <u>Puglise</u>. There, the plaintiff alleged that the defendant made promises through its "policy against racial discrimination and retaliation." The plaintiff alleged that she relied on these promises to her detriment—and that the defendant should reasonably have expected her reliance. <u>Puglise</u>, 2009 WL 3079200, at *2. The court held that the plaintiff's proper remedy was a claim under the KCRA. <u>See id.</u> In this case, the same allegations are made, but the policy was allegedly one against age discrimination. Thus, the Court finds that a similar conclusion to <u>Puglise</u> is warranted; promissory estoppel is not the proper remedy for the Plaintiff. Bel's motion to dismiss [DN 16] is **GRANTED** on this issue, and the Plaintiff's promissory estoppel claim based on Bel's anti-discrimination policy is **DISMISSED**. Other courts have reached similar conclusions with respect to the KCRA and other common-law torts. <u>See</u> <u>Harris v. Burger King Corp.</u>, 993 F. Supp. 2d 677 (W.D. Ky. 2014) (wrongful discharge).[1]

Bel next argues that the Plaintiff's second promissory estoppel claim must be dismissed since it is barred by the at-will doctrine and is not plausible. This claim is based on Bel's alleged violation of its long-standing pallet policy. (Compl. [DN 1-1] ¶¶ 45-50.)

Under Kentucky law, an employee can be discharged "for good cause, for no cause, or for a cause that some might view as morally indefensible." <u>Wymer v. JH Props., Inc.</u>, 50 S.W.3d 195, 198 (Ky. 2001). Bel argues that the Plaintiff has not asserted any facts in his complaint to alter Kentucky's at-will presumption. Further, Bel argues that an "at-will employee can claim

---

[1] Moreover, the Court notes that the Plaintiff's promissory estoppel claim is dependent on his ability to successfully allege an age discrimination claim. The promissory estoppel claim is based on the Plaintiff's allegation that Bel failed to honor its promise to not discriminate. Here, though, the Court has held that the Plaintiff failed to allege sufficient facts to support an age discrimination claim. If there are not sufficient allegations of discrimination, there are similarly not sufficient allegations of Bel's failure to honor its promise to not discriminate.

promissory estoppel only if [he] can show a specific promise of job security." Harris v. Burger King Corp., 993 F. Supp. 2d 677 (W.D. Ky. 2014) (citing DePrisco v. Delta Air Lines, Inc., 90 Fed. App'x 790, 796 (6th Cir. 2004)). According to Bel, the Plaintiff has not alleged that Bel promised him job security. Instead, the Plaintiff has alleged that Bel promised to follow its pallet policy, under which he was permitted to keep the distributor's reimbursement money as a "bonus." (Compl. [DN 1-1] ¶¶ 15, 22, 46.) In other words, the Plaintiff claims that prior plant managers condoned his conduct—and he relied on their actions to his detriment.

Bel cites Dorger v. All-State Ins. Co. in support of its position. No. 2:08-56, 2009 WL 1248989 (E.D. Ky. May 1, 2009). In that case, the plaintiff was terminated from her job as a staff claims service adjuster for failing to follow procedures for booking appointments. Id. at *1-2. She filed a promissory estoppel claim against her former employer, asserting that her supervisors had approved her method for booking appointments—and that she reasonably relied to her detriment on those representations. Id. at *7. The court held that since the plaintiff was an at-will employee, promissory estoppel was not a viable cause of action, as the plaintiff was "fired for conduct her supervisors allegedly represented as being permissible." Id. at *8. The court highlighted that the plaintiff did not identify any express statement between herself and her employer which altered the at-will relationship. Also, the case did not involve a promise regarding job security. Id. at *7. Bel argues that a similar conclusion should be drawn in this case.

The Plaintiff responds only by arguing that "[t]here are limitations on the at-will doctrine to provide protection from abuses." Wymer v. JH Props., Inc., 50 S.W.3d 195, 198 (Ky. 2001). According to the Plaintiff, Kentucky case law "recognizes a cause of action when an employee is terminated in contravention of statutory or constitutional provisions." Id. The Plaintiff states that

he has sufficiently alleged facts to raise an inference that he was fired "in contravention of his statutorily protected civil rights, specifically age over 40." (Pl.'s Resp. to Def.'s Mot. [DN 19] 5.)

The Court, however, finds the Plaintiff's argument to be off-point. As an initial matter, the Wymer case relied on by the Plaintiff does not address a promissory estoppel claim. Instead, it addresses a different cause of action: wrongful discharge in violation of public policy. Further, while there are limits to the at-will doctrine, Kentucky cases that have held promissory estoppel available to terminated at-will employees generally involve promises regarding job security. See, e.g., Brown v. Louisville Jefferson Cnty. Redevelopment Auth. Inc., 310 S.W.3d 221, 224-25 (Ky. Ct. App. 2010) (discussing a plaintiff who was allegedly promised continued employment). In this case, even taking the allegations in the Plaintiff's complaint as true, there is no claim that Bel made a promise regarding job security. Instead, like the allegations in Dorger, the Plaintiff has only alleged that he was fired for conduct that management represented was permissible. The Plaintiff likewise has failed to allege any facts from which it could be determined that he was not an at-will employee. Bel's motion to dismiss [DN 16] is **GRANTED** on this issue. The Plaintiff's second promissory estoppel claim is **DISMISSED**.

The Court's conclusion does not change in light of the Plaintiff's argument that Bel gave him a "fringe benefit" in the form of the reimbursement checks. The Plaintiff argues that under Kentucky law, "[p]romises by employers to provide certain fringe benefits" give rise to claims for promissory estoppel. (Pl.'s Resp. to Def.'s Mot. [DN 19] 5.) The Plaintiff cites McCarthy v. Louisville Cartage Co., 796 S.W.2d 10, 12 (Ky. App. 1990), in support of his position. However, McCarthy is inapposite to this case. There, an employer offered an employee certain benefits, including life insurance, at the start of his employment. Id. at 11. Later, the employer cancelled the policy, purchased a new policy, and offered it to the employees. This second policy lapsed

9

due to non-payment of premiums; however, the employee's wife did not learn of this lapse until after her husband's death. Id. at 11-12. Based on these claims, the court held that a promissory estoppel claim was viable, as the employer promised to provide life insurance but terminated the coverage without informing its employees; it was reasonable to expect that the employee relied on the life insurance policy instead of buying his own; and this reliance was to his detriment since he died without life insurance. Id. at 12. The facts here, however, do not fit this mold. This case is more similar to Dorger, as the Plaintiff has alleged that Bel promised he could perform his duties a certain way (i.e. by taking old pallets and retaining the distributor's reimbursement check). The Plaintiff was not offered a bonus payment at the start of his employment.

Instead, the Plaintiff has alleged that he **voluntarily** began taking the pallets and was rewarded by Bel. The Plaintiff did not, in any way, change or alter his conduct based on what prior management told him on their "pallet policy." (See Compl. [DN 1-1] ¶¶ 13-16, 18-20.) The Court finds that under Kentucky law, this simply cannot (and does not) give rise to a promissory estoppel claim. See, e.g., Street v. U.S. Corrugated, Inc., No. 1:08-CV-00153, 2011 WL 304568, at *6-7 (W.D. Ky. Jan. 25, 2011) (holding that the plaintiffs' promissory estoppel claim was not viable, as they could not establish detrimental reliance because "after the representations were made, Plaintiffs' position remained unchanged"). The Plaintiff's claim fails as a matter of law.

As a final matter, the Plaintiff has filed motions asking the Court to consider two affidavits in conjunction with his response to Bel's motion to dismiss [DNs 21, 23, 24]. The Plaintiff brings the motions "pursuant to FRCP 6(c)(2) and FRCP 56(c)(4)." The Court finds, however, that the motions are procedurally improper. As noted by Bel, Rule 6(c)(2) governs the timing of filings and provides that "[a]ny affidavit supporting a motion must be served with the motion." Fed. R. Civ. P. 6(c)(2). The Plaintiff, however, does not file the affidavits of Karen

Roof or Jean-Pierre Plessis in support of a motion for relief; instead, he has filed them in opposition to Bel's motion.

Further, Rule 56(c)(4) does not provide a vehicle for the Court to consider the affidavits. Rule 56(c)(4) states only that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). While a court may exercise its discretion to convert a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment when matters outside of the pleadings are presented, see Fed. R. Civ. P. 12(d), this Court will decline to do so here. In this case, the affidavits neither address nor refute the deficiencies identified in Bel's motion. See U.S. Specialty Ins. Co. v. U.S. ex rel. E.A. Biggs of Ky., LLC, No. 1:12-CV-00134-JHM, 2014 WL 241777, at *4 (W.D. Ky. Jan. 22, 2014) (addressing a similar situation and finding that it did not need to "consider any matters outside the pleadings to rule on the motion to dismiss").

### IV. Conclusion

For these reasons, and consistent with the Court's conclusions above, **IT IS HEREBY ORDERED** that Bel Brands USA, Inc.'s Motion to Dismiss [DN 16] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Enter Affidavit of Karen Roof [DN 21] is **DENIED**.

**FURTHER** that the Plaintiff's Motions to Enter Affidavit of Jean-Pierre Plessis [DNs 23, 24] are **DENIED**.

*Joseph H. McKinley*
**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 25, 2014

cc: counsel of record